UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GEFT OUTDOOR LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-03058-JPH-MPB ) |
| CITY OF FISHERS, INDIANA, CITY OF FISHERS BOARD OF ZONING APPEALS, | ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

GEFT OUTDOOR is an advertising company that wants to construct two digital billboards in Fishers, Indiana, on property that it has leased. But the billboards don't meet the sign standards in Fishers's Unified Development Ordinance, and the Fishers Board of Zoning Appeals denied GEFT's requests for variances. GEFT therefore brought this case, alleging that the sign standards and variance process violate the First Amendment. It also seeks a preliminary injunction that would prevent Fishers from enforcing the sign standards against the two proposed billboards. For the reasons below, that motion is **DENIED**. Dkt. [10].

# I.
# Facts & Background[1]

GEFT is an outdoor advertiser that buys or leases land to use for signs that would convey "both commercial and noncommercial speech."  Dkt. 1 at 3 (verified complaint).  It has leased portions of two properties in Fishers and plans to put up digital billboards on both.  *Id.* at 3–4.  The first billboard, on 131st Street, would be "a 70-foot double-sided, back-to-back billboard with digital displays on both sides."  *Id.* at 9.  The second, on 106th Street, would be "a 70-foot double-sided, back-to-back billboard with one side having a digital display and the other with a static display."  *Id.*

Under Fishers's Unified Development Ordinance ("UDO"), GEFT must apply for and obtain a permit before putting up a sign, as defined by the UDO. UDO § 6.17.3.A ("It is unlawful for any person to place, alter, or to permit the placement or alteration of a sign . . . without first obtaining an approved sign permit application."); dkt. 32-4 at 4.  The UDO defines a Sign as:

> Any name, identification, description, display, or illustration which is affixed to, painted on, or is represented directly or indirectly upon a building, structure, or piece of land, and which directs attention to an object, product, place, activity, person, institution, organization, or business.  Religious symbols on places of worship or structures owned and operated by religious organizations are not considered a sign unless accompanied with text.  Address numbers are not considered a sign.

---

[1] By agreement of the parties, there has been no evidentiary hearing.  *See* dkt. 19; dkt. 36.  The Court therefore bases these facts on the written record, including the uncontested allegations and designated deposition testimony.

Dkt. 27 at 4 (quoting UDO art. 12.2).[2]

The Fishers Board of Zoning Appeals ("BZA") denied GEFT's requests for variances for the proposed billboards. Dkt. 1 at 10–11. GEFT then brought this action, alleging that (1) Fishers' sign standards use content-based restrictions on speech in violation of the United States and Indiana Constitutions, (2) the permitting and variance schemes in Fishers' UDO are unconstitutional prior restraints on speech under the United States and Indiana Constitutions, and (3) the BZA's denials of GEFT's variance requests violate the United States Constitution and exceeded its statutory authority. *Id.* at 12–20.[3]

GEFT also filed a motion for a preliminary injunction, arguing that portions of Fishers' UDO violate the First Amendment because they "contain impermissible content-based regulations and/or impermissible prior restraints on speech." Dkt. 11 at 2; *see* dkt. 10 (limiting GEFT's motion for a preliminary injunction to its first and second claims). GEFT seeks a preliminary injunction preventing Fishers from enforcing its UDO with respect to GEFT's two proposed billboards. Dkt. 10.

---

[2] The current UDO appears to have removed the religious-symbol exclusion, with an effective date of May 16, 2022. *See* http://online.encodeplus.com/regs/fishers-in/doc-viewer.aspx#secid-1.

[3] Fishers filed a motion to dismiss GEFT's first and third causes of action, dkt. 25, but the Court need not resolve that motion in deciding GEFT's motion for a preliminary injunction.

## II.
## Applicable Law

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a preliminary injunction is appropriate under Rule 65 involves a two-step inquiry, with a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). At the threshold phase, the moving party must show that: (1) without the requested relief, it will suffer irreparable harm during the pendency of its action; (2) traditional legal remedies would be inadequate; and (3) it has "a reasonable likelihood of success on the merits." *Id.* "If the moving party cannot establish . . . these prerequisites, a court's inquiry is over and the injunction must be denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

If the movant satisfies the threshold requirements, the Court proceeds to the balancing phase "to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits,

the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

### III.
### Analysis

GEFT has shown a likelihood of success on the merits of its arguments that the UDO includes some content-based provisions and that its permitting and variance schemes are unconstitutional prior restraints. It has not shown, however, that it is entitled to the broad preliminary injunctive relief that it seeks—an order declaring the UDO's sign standards "unconstitutional in their entirety," preventing enforcement of the UDO, and allowing GEFT to put up its proposed signs. Dkt. 10 at 2; dkt. 11 at 32. That's because the provisions of the UDO that are likely unconstitutional are severable from the rest of the UDO, which would still regulate GEFT's proposed billboards.

**A. GEFT's Challenge to Content-Based Regulation of Speech**

GEFT argues that the UDO violates the First Amendment because it regulates signs based on content. Dkt. 11 at 2. GEFT contends that two parts of the UDO are content-based—its definition of "sign," because it excludes religious symbols, and its section on "Post Signs," because it does not require a permit for qualifying "for sale" or "for lease" signs. *Id.* at 23–26. Regarding the religious-symbol exclusion, Fishers briefly argues that, at least in the permitting context, it isn't content based because religious symbols are only excluded if accompanied by text. Dkt. 27 at 20. So, Fishers contends, it's "the mere physical *existence* of the text—not its substance or content—that matters." *Id.*

The UDO's exclusion of religious symbols from its "sign" definition is content based because religious symbols convey a message and are treated less restrictively than other messages. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message displayed."). Fishers's argument glosses over the required determination whether something is in fact a religious symbol—which is itself communicative. *See American Legion v. American Humanist Assn.*, 139 S. Ct. 2067, 2074–76 (2019) (explaining the messages, both religious and secular, that can be conveyed with the symbol of the cross).

For example, GEFT could not display certain symbols, such as a "republican elephant," without first meeting the UDO's sign restrictions. *See* dkt. 32 at 2. Yet under the UDO, another group could display a similarly sized religious symbol free from regulation. *See id.* That is content-based regulation because the nature of the symbol—and thus the nature of the message—is the reason for the unequal treatment. *See Reed*, 576 U.S. at 163 ("The commonsense meaning of the phrase 'content-based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message . . . . Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter.").

Regarding the post-sign regulations, Fishers does not contest—for the purpose of resolving GEFT's motion for a preliminary injunction—that "for sale" and "for lease" signs are not content neutral. *See* dkt. 27 at 27–28. The Court

therefore treats the post-sign provisions as content based also. *See Reed*, 576 U.S. at 164 (explaining that "defining regulated speech by its function or purpose" is a distinction "drawn based on the message a speaker conveys" and is therefore content based).

### B. GEFT's Challenge to the UDO's Permitting Provisions

Under the UDO, "[i]t is unlawful for any person to place, alter, or to permit the placement or alteration of a sign . . . without first obtaining an approved sign permit application." UDO § 6.17.3.A; dkt. 32-4 at 4. GEFT contends that this requirement is an unconstitutional prior restraint on speech because it gives Fishers "unbridled discretion" to suppress speech before it occurs. Dkt. 11 at 10–11, 19–21. Fishers responds that its permitting process is content neutral and limited to applying the UDO's express provisions, so it is constitutional. Dkt. 27 at 17–20.

Fishers's sign-permit requirement is a prior restraint on speech because it requires a permit before a sign is put up. *See City of Lakewood v. Plain Dealer Pub'g Co.*, 486 U.S. 750, 757 (1988) ("[A] licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship."). "In general, prior restraints are highly disfavored and presumed invalid." *Stokes v. City of Madison*, 930 F.2d 1163, 1169 (7th Cir. 1991). But a prior restraint may be allowed if "procedural safeguards tightly control the discretion of the administrative authority and subject it to rapid judicial review." *Id.* In short, the "settled rule is that a system of prior restraint avoids constitutional infirmity only if it takes

7

place under procedural safeguards designed to obviate the dangers of a censorship system." *Id.* (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975)).

The extent of procedural protections that are required depends on whether the prior restraint is content based. If it is, then the safeguards from *Freedman v. Maryland* must generally be provided: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002) (citing *Freedman v. Maryland*, 380 U.S. 51 (1965)).

Because putting up a "sign"—as defined by the UDO—requires a permit, and the UDO's "sign" definition is content based due to its religious-symbol exclusion, Fishers's permitting scheme is not content neutral. While Fishers argues that its permitting procedures would support a content-neutral licensing scheme, it does not contend that they can support a content-based one. Dkt. 27 at 17–20. Nor has Fishers shown that its ordinance provides the type of "expeditious judicial review" at which it "must bear the burden of proof." *Thomas*, 534 U.S. at 321; *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227–30 (1990).

GEFT has therefore shown a likelihood of success on its claim that Fishers's sign-permitting scheme does not provide the required constitutional protections.

### C. GEFT's Challenge to the UDO's Variance Provisions

GEFT argues that Fishers's variance process is unconstitutional because it applies "broad, subjective, and amorphous" criteria that invite content-based discrimination.  Dkt. 11 at 12–13.  Fishers responds that entities denied variances can pursue further review in a Board of Zoning Appeals, where appropriate safeguards would be provided.  Dkt. 27 at 22–23.

The UDO allowed[4] variances from sign standards based only on certain determinations:

> 1. A variance of land use may be approved only upon a determination that the Findings of Fact demonstrate:
>    a. The use will not be injurious to the public health, safety, morals, and general welfare of the community.
>    b. The use and value of the area adjacent to the property including in the Variance will not be affected in a substantially adverse manner.
>    c. The need for the Variance arises from some condition to the property involved.
>    d. The strict application of the terms of the UDO will constitute an unnecessary hardship if applied to the property for which the Variance is sought.
>    e. Does not interfere substantially with the Comprehensive Plan.

---

[4] The current UDO appears to have been modified with specific standards for variances from the UDO's sign requirements.  *See* http://online.encodeplus.com/regs/fishers-in/doc-viewer.aspx#secid-1, § 10.2.24.E.6.

UDO § 10.2.24.E.1 (Dkt. 32-5 at 37).

Because the variance scheme is part of the UDO's permitting scheme, it is a prior restraint, *International Outdoor, Inc. v. City of Troy, Mich.*, 974 F.3d 690, 697–98 (6th Cir. 2020), and is therefore "highly disfavored and presumed invalid," *Stokes*, 930 F.2d at 1169. To survive, a prior restraint "must contain narrow, objective, and definite standards to guide the licensing authority." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). "The reasoning is simple"—if the prior restraint "involves appraisal of facts, the exercise of judgment, and the formation of an opinion . . . the danger of censorship and of abridgement of our precious First Amendment freedoms is too great to be permitted." *Id.*

The variance procedure required a determination from findings of fact and allowed denials based on "multiple vague and undefined criteria" including "morals," "general welfare," and "unnecessary hardship." *International Outdoor*, 974 F.3d at 698. Those criteria were vague enough that they "gave a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Id.* (quoting *Plain Dealer Pub'g Co.*, 486 U.S. at 759). They were therefore "an unconstitutional prior restraint on speech." *Id.*; *see GEFT Outdoor, L.L.C. v. Monroe County, Ind.*, No. 1:19-cv-1257-JRS-MPB, 2021 WL 5494483 at *12–13 (S.D. Ind. Nov. 23, 2021) (appeal pending) (holding that Monroe County's essentially identical variance procedure was

10

unconstitutionally vague because the criteria were "value laden and susceptible to wide and varying differences of opinion").

GEFT has therefore shown a likelihood of success on its claim that Fishers's variance scheme is an unconstitutional prior restraint.

### D. Severability

For the reasons above, GEFT has shown a likelihood of success on its claims that certain portions of the UDO are unconstitutional content-based regulations and prior restraints. GEFT argues that these unconstitutional UDO provisions cannot be severed, so the UDO's sign regulations must be stricken "in their entirety." Dkt. 11 at 27–31. Fishers responds that under the UDO's express severability clause, any problematic parts of the UDO can be stricken while the rest of the UDO remains in effect. Dkt. 27 at 23–30.

"Severability of a local ordinance is a question of state law." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 772 (1988). Under Indiana law, a statute or ordinance with an unconstitutional provision "is not necessarily void in its entirety." *Paul Steiler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269, 1279 (Ind. 2014). Instead, the "unobjectionable" portions can be severed and remain in effect if (1) they can be given legal effect and (2) "the legislature intended the provision[s] to stand" if others fall. *Id.*

#### 1. Legal Effect of Remaining Provisions

Here, the remainder of the UDO can be given legal effect even if the challenged portions are severed. Without its religious-symbol exclusion, the UDO's definition of "sign" would be: "Any name, identification, description,

11

display, or illustration which is affixed to, painted on, or is represented directly or indirectly upon a building, structure, or piece of land, and which directs attention to an object, product, place, activity, person, institution, organization, or business. . . . Address numbers are not considered a sign." UDO art. 12.2. That leaves a standard "sign" definition that doesn't make any of the UDO's other provisions—like the pole sign ban and digital sign ban—unworkable. *See In re City of Mishawaka*, 289 N.E.2d 510, 535 (Ind. 1972) ("[T]he deletion leaves the remainder of the statute in a sensible, complete form, capable of being executed alike against all similarly situated or affected."). Indeed, it's unsurprising that the mere removal of an exclusion leaves a workable legal standard. *See Paul Stieler*, 2 N.E.3d at 1279 ("Standing along and without its exemption for riverboat casinos, the [amended smoking ban] could be given legal effect.").

The same is true of Fishers's permitting scheme. Without it, Fishers would simply have to enforce its sign standards "on the back end," as it already does when someone neglects to obtain a permit in advance or puts up a sign that deviates from its approved permit. Dkt. 32-1 at 13–14 (Vukusich 30(b)(6) dep. at 42–47); *see GEFT Outdoor*, 2021 WL 5494483 at *13 ("Instead of taking place on the front end before a sign is erected, regulation of signs will occur on the back end after a sign has been erected through an ordinance enforcement procedure."). This resolves GEFT's content-based challenge to the UDO's post-sign regulations also, because GEFT argues that whether a permit is required impermissibly depends on the content of the sign. Dkt. 11 at 25. The

12

severance of the permitting scheme removes that different treatment, because then no signs would require permits.

Last, the removal of Fishers's variance scheme would not prevent the remainder of the UDO from having legal effect. Indeed, the only effect would be that no variances and no discretion would be permitted—the UDO's standards could not be relaxed. *International Outdoor*, 974 F.3d at 699 (holding that the sign-variance procedures at issue were severable, meaning "that no grant of a variance [is] possible"); *accord GEFT Outdoor*, 2021 WL 5494483 at *13 (holding that Monroe County's unconstitutional variance scheme for sign standards was severable); *Conteers LLC v. City of Akron*, No. 5:20-cv-542, 2020 WL 5529656 at *13–14 (N.D. Ohio Sept. 15, 2020).

### 2. Fishers's Intent on Severance

For the intent of the legislative body, Indiana law focuses on severability provisions, which create a presumption that any "infirm provision . . . is severable, leaving the remainder intact." *City of Hammond v. Herman & Kittle Props., Inc.*, 119 N.E.3d 70, 87 (Ind. 2019); *see Paul Stieler*, 2 N.E.3d at 1279. Here, the UDO includes a severability provision: "If any provision or the application of any provision of the UDO is held unconstitutional or invalid by the courts, the remainder of the UDO or the application of such provision to other circumstances shall not be affected." UDO § 1.2.4. The resulting presumption is that Fishers would intend the remainder of the UDO to stay in effect.

GEFT nevertheless argues that the UDO isn't severable because Fishers wouldn't intend to have sign standards so different from what it enacted. Dkt. 32 at 2, 16–17. GEFT contends, for example, that if the religious-symbol exclusion is severable from the definition of "sign," then religious symbols would be regulated as signs despite the sign definition originally calling for the opposite. *Id.* But this argument asks the wrong question because it focuses on the original standards instead of on "whether [Fishers] intended the *remainder* of the [UDO] to stand if the invalid provision" is struck down. *Herman & Kittle Props.*, 119 N.E.3d at 87 (emphasis added). Besides, Fishers did address in its original ordinance's severability clause what it intends if "*any provision*"—without exception—were struck down. UDO § 1.2.4 (emphasis added).

GEFT has not overcome the strong presumption of severability created by the express severability clause, for three reasons. First, there's no evidence that the UDO would not have been adopted without those provisions. *See Paul Stieler*, 2 N.E.3d at 1279. Second, the sign provisions' explicit purposes include "maintaining the City's aesthetic environment," "guarding against excessive advertising and the confusing proliferation of signs," and "minimizing the distraction of excessive and intrusive signs." UDO § 6.17.1. None of those legitimate purposes could be achieved without sign restrictions. *See Midwest Media Prop., L.L.C. v. Symmes Township, Ohio*, 503 F.3d 456, 464 (6th Cir. 2007). Third, the sign standards are comprehensive, demonstrating Fishers's

strong interest in sign regulation generally and the UDO's limitations specifically. *See In re Mishawaka*, 289 N.E.2d at 513.

The UDO therefore shows Fishers's intent that its sign standards be severable.

### E. GEFT's Entitlement to Injunctive Relief

Fishers argues that even if GEFT prevails on its constitutional challenges to certain parts of the UDO, GEFT's proposed billboards are still subject to regulation under other parts of the UDO that remain intact, including the pole sign ban (§ 6.17.2.A)[5], digital sign ban (§ 6.17.5.I), and maximum area and height limitations for ground signs (§ 6.17.6.E). Dkt. 27 at 9–10; *see* dkt. 26. GEFT contends that the Court should find the entire sign standards unconstitutional and thus unenforceable because of the content-based religious symbol exclusion in the UDO's definition of "sign.". Dkt. 32 at 5–8; *see* dkt. 11 at 27–28.

As explained above, the religious-symbol exclusion is severable from the UDO's definition of "sign." And GEFT's proposed billboards do not conform with other provisions of the UDO that remain intact.[6] *See* dkt. 1; dkt. 11; dkt.

---

[5] Under this section, "[t]he only signs permitted are those stated in [UDO Article 6.17]; all other signs are prohibited unless otherwise stated within the UDO." § 6.17.2.A. Pole signs are not an allowed sign in the UDO. *See* § 6.17.6.

[6] Moreover, the current version of Fishers's UDO no longer includes the religious-symbol exclusion from the "sign" definition. *See* http://online.encodeplus.com/regs/fishers-in/doc-viewer.aspx#secid-1; https://www.fishers.in.us/DocumentCenter/View/30426/UDO-Text-Amendment---Ordinance---041822E---Final-Reading. The parties have not addressed that apparent development, but it's possible that due to it, "the need for an injunction has disappeared." *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) (addressing when there is no need for an injunction in a facial challenge to an ordinance once it has been repealed).

32 at 7. Consider the prohibition on digital signs, UDO § 6.17.5.I, and the maximum area and height limitations, UDO § 6.17.6.E. These parts of the UDO—unchallenged by GEFT except through their use of the defined term "sign"— would still prohibit GEFT's proposed signs. *See City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("It is common ground that governments may regulate the physical characteristics of signs."); *Leibundguth Storage & Van Serv., Inc. v. Vill. of Downers Grove, Ill.*, 939 F.3d 859, 862 (7th Cir. 2019) ("A limit on the size and presentation of signs is a standard time, place, and manner rule, a form of aesthetic zoning. The Supreme Court has told us that aesthetic limits on signs are compatible with the First Amendment.").

Because the challenged provisions are severable, the provisions banning digital signs and imposing maximum area and height limitations remain enforceable and would prohibit GEFT's proposed billboards. The only change would be that they would also apply to religious symbols, which has no bearing on whether GEFT's proposed signs comply with the UDO. GEFT's signs would therefore still be regulated "even if" it succeeds on its content-based challenges." *Harp Advertising Ill., Inc. v. Vill. of Chicago Ridge, Ill.*, 9 F.3d 1290, 1291 (7th Cir. 1993); *see Midwest Media*, 503 F.3d at 461–62. GEFT therefore has not shown that it is entitled to preliminary injunctive relief preventing enforcement of the entire UDO. *See Harp Advertising Ill.*, 9 F.3d at 1292.[7]

---

[7] Because GEFT is not entitled to the sweeping injunction that it seeks, the Court does not address—at this stage—whether GEFT lacks standing because any injuries are not redressable. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (addressing standing to seek injunctive relief and explaining that a district court "can

In short, GEFT has shown a likelihood of success on its claims that the UDO includes some content-based provisions and that its permitting and variance schemes are unconstitutional prior restraints. But GEFT has not shown that it is entitled to a broad preliminary injunction that would allow GEFT to put up its proposed signs subject to no regulation, dkt. 10 at 2; dkt. 11 at 32. *See E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) ("[I]njunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation."). Because the rest of the UDO remains intact after the unconstitutional provisions have been severed, GEFT's proposed billboards would still be subject to regulation under at least the UDO's digital sign ban and maximum area and height limitations.

GEFT is not entitled to the broad preliminary injunctive relief that it seeks—an order declaring the UDO's sign standards "unconstitutional in their entirety," preventing enforcement of the UDO, and allowing GEFT to put up its proposed signs. Dkt. 10 at 2; dkt. 11 at 32. Therefore, GEFT's motion for a preliminary injunction is **DENIED**.[8]

### IV.
### Conclusion

GEFT's motion for preliminary injunction is **DENIED**. Dkt. [10].

**SO ORDERED.**

---

address a motion for a preliminary injunction without making a conclusive decision about whether it as subject matter jurisdiction").

[8] The denial is without prejudice to GEFT renewing its motion for preliminary injunctive relief, subject to this order, and seeking a narrower preliminary injunction.

Date: 8/11/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

William J. Barkimer
KRIEG DEVAULT LLP
wbarkimer@kdlegal.com

A. Richard M. Blaiklock
LEWIS WAGNER, LLP
rblaiklock@lewiswagner.com

Matthew C. Branic
KRIEG DEVAULT LLP (Carmel)
mbranic@kdlegal.com

Libby Yin Goodknight
KRIEG DEVAULT LLP (Indianapolis)
lgoodknight@kdlegal.com

Mark J. R. Merkle
KRIEG DEVAULT LLP (Indianapolis)
mmerkle@kdlegal.com