UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEFT OUTDOOR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-03058-JPH-MPB |
| | ) | |
| CITY OF FISHERS, INDIANA, | ) | |
| CITY OF FISHERS BOARD OF ZONING | ) | |
| APPEALS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION TO AMEND**

GEFT OUTDOOR is an advertising company that wants to construct two digital billboards in Fishers, Indiana, on property that it has leased.  But the billboards didn't meet the sign standards in Fishers's Unified Development Ordinance ("UDO"), and the Fishers Board of Zoning Appeals denied GEFT's requests for variances to allow digital signs that exceed "the sign area maximum and sign height maximum."  Dkt. 1-3; dkt. 1-4.  GEFT therefore filed the complaint in this case and a motion for preliminary injunction, alleging that the sign standards and variance process violate the First Amendment. Dkt. 1; dkt. 10.

In its ruling on the motion for preliminary injunction, the Court found that GEFT had shown a likelihood of success on its claims that the UDO included unconstitutional content-based provisions and prior restraints.  Dkt. 43 at 5.  But the Court also found that the challenged provisions were severable and that the remaining provisions of the UDO would bar GEFT's

1

proposed billboards because they are digital and exceed the UDO's maximum height and area limits. *Id.* at 15–17. The Court therefore denied the motion for preliminary injunction, holding that GEFT was not entitled to the broad preliminary injunctive relief that it asked for—an order declaring the UDO's sign standards "unconstitutional in their entirety," preventing enforcement of the UDO, and allowing GEFT to put up its proposed signs. *Id.* at 17. That denial of the motion for preliminary injunction was "without prejudice to GEFT renewing its motion for preliminary injunction . . . and seeking a narrower injunction." *Id.* at 17 n.8.

GEFT has filed a motion to amend that order, again asking the Court for broad injunctive relief; specifically, "to strike down the Sign Standards in their entirety and allow GEFT to immediately erect the Digital Billboards." Dkt. 49 at 14. For the reasons below, that motion is **DENIED**. Dkt. [48].

## I.
## Facts & Background

No party challenges the factual recitation from the order denying GEFT's motion for preliminary injunction, so it is largely repeated below. Dkt. 43; *see* dkt. 49; dkt. 58.[1]

GEFT is an outdoor advertiser that buys or leases land to use for signs that would convey "both commercial and noncommercial speech." Dkt. 1 at 3 (verified complaint). It has leased portions of two properties in Fishers and

---

[1] By agreement of the parties, there was no evidentiary hearing. *See* dkt. 19; dkt. 36. The Court therefore based these facts on the written record, including the uncontested allegations and designated deposition testimony.

plans to put up digital billboards on both. *Id.* at 3–4. The first billboard, on 131st Street, would be "a 70-foot double-sided, back-to-back billboard with digital displays on both sides." *Id.* at 9. The second, on 106th Street, would be "a 70-foot double-sided, back-to-back billboard with one side having a digital display and the other with a static display." *Id.*

Under Fishers's Unified Development Ordinance ("UDO"), GEFT was required to apply for and obtain a permit before putting up a sign, as defined by the UDO. UDO § 6.17.3.A ("It is unlawful for any person to place, alter, or to permit the placement or alteration of a sign . . . without first obtaining an approved sign permit application."); dkt. 32-4 at 4. The UDO defined a Sign as:

> Any name, identification, description, display, or illustration which is affixed to, painted on, or is represented directly or indirectly upon a building, structure, or piece of land, and which directs attention to an object, product, place, activity, person, institution, organization, or business. Religious symbols on places of worship or structures owned and operated by religious organizations are not considered a sign unless accompanied with text. Address numbers are not considered a sign.

Dkt. 27 at 4 (quoting UDO art. 12.2).[2]

The Fishers Board of Zoning Appeals ("BZA") denied GEFT's requests for variances for the proposed billboards. Dkt. 1 at 10–11. GEFT then brought this action, alleging that (1) Fishers' sign standards use content-based restrictions on speech in violation of the United States and Indiana

---

[2] Fishers has since amended the UDO to remove the religious-symbol exclusion. Dkt. 61 at 3 n.3.

Constitutions, (2) the permitting and variance schemes in Fishers' UDO are unconstitutional prior restraints on speech under the United States and Indiana Constitutions, and (3) the BZA's denials of GEFT's variance requests violate the United States Constitution and exceeded its statutory authority. *Id.* at 12–20.

GEFT also filed a motion for preliminary injunction preventing Fishers from enforcing its UDO with respect to GEFT's two proposed billboards, dkt. 10, arguing that portions of Fishers' UDO violate the First Amendment because they "contain impermissible content-based regulations and/or impermissible prior restraints on speech." Dkt. 11 at 2; *see* dkt. 10 (limiting GEFT's motion for a preliminary injunction to its first and second claims). The Court denied that motion. Dkt. 43. GEFT had shown a likelihood of success on the merits of its arguments that the UDO included some content-based provisions and that its permitting and variance schemes are unconstitutional prior restraints. *See id.* at 5. But because the UDO provisions that were likely unconstitutional were severable from the rest of the UDO, GEFT had not shown that it was entitled to the broad preliminary injunctive relief it sought—an order declaring the UDO's sign standards "unconstitutional in their entirety," preventing enforcement of the UDO, and allowing GEFT to put up its proposed signs. *Id.* (citing dkt. 10 at 2; dkt. 11 at 32).

GEFT filed a motion to amend the order denying its motion for preliminary injunction.  Dkt. 48.[3]

## II.
## Applicable Law

Federal Rule of Civil Procedure 59(e) allows a motion to alter or amend a judgment within 28 days after the entry of the judgment.[4]  "Relief under Rule 59(e) is an extraordinary remedy reserved for the exceptional case."  *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 463 (7th Cir. 2021).  A Rule 59(e) motion "may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available."  *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).  It "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment."  *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020).

## III.
## Analysis

GEFT argues that the Court "should have stricken the Sign Standards in their entirety and allowed GEFT to erect the Digital Billboards" because the

---

[3] GEFT also filed a notice of appeal.  Dkt. 50.  "[T]he filing of a notice of appeal generally confers jurisdiction with the court of appeals and divests the district court of jurisdiction over certain related matters."  *INTL FCStone Fin., Inc. v. Jacobson*, 950 F.3d 491, 502 (7th Cir. 2020).  Here, however, GEFT's notice of appeal is "ineffective" while its Rule 59(e) motion to amend remains pending.  *Square D Co. v. Fastrak Softworks, Inc.*, 107 F.3d 448, 450 (7th Cir. 1997) (explaining Fed. R. App. P. 4(a)(4)); *see Katerinos v. U.S. Dept. of Treasury*, 368 F.3d 733, 737–38 (7th Cir. 2004).

[4] GEFT's motion is permissible under Rule 59(e) because "judgment" includes "any order from which an appeal lies," Fed. R. Civ. P. 54(a), and 28 U.S.C. § 1292(a) allows appeals from orders denying injunctions.  *See Square D Co.*, 107 F.3d at 450 n.1.

remedy for a First Amendment violation is "more, not less, speech."  Dkt. 49 at 12; dkt. 61 at 4.  GEFT further contends that the Court's finding that the UDO's unconstitutional provisions were severable was "clearly contrary to . . . precedent" and therefore "manifest error."  *Id.* at 4.  Fishers argues that the denial of the preliminary injunction properly applied well-settled severability law in the First Amendment context.  Dkt. 58 at 7–9.

Under the First Amendment, "it is our law and our tradition that more speech, not less, is the governing rule."  *Citizens United v. Fed. Elec. Com'n*, 558 U.S. 310, 361 (2010) ("Here Congress has created categorical bans on speech that are asymmetrical to preventing *quid pro quo* corruption.").  But GEFT's analysis goes no further than that broad principle.  *See* dkt. 49.

GEFT's argument hinges on the premise that the UDO's constitutional infirmities can be remedied only by GEFT's putting up its proposed billboards. *See id.* at 2.  That premise is wrong.  GEFT's underlying First Amendment right is not to the billboards themselves, but to be free from regulations and prior restraints that are content-based.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.").  Indeed, "[a] limit on the size and presentation of signs is a standard time, place, and manner rule" that is "compatible with the First Amendment."  *Leibundguth Storage & Van Serv., Inc. v. Vill. of Downers Grove, Ill.*, 939 F.3d 859, 862 (7th Cir. 2019).  As the Court's order denying the

6

preliminary injunction explained, unchallenged UDO provisions prohibit GEFT's proposed billboards even after the challenged provisions are severed. Dkt. 43 at 15–17.

GEFT does not explain why those unchallenged regulations should be overridden with a broad injunction. *See City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs.").[5] Moreover, the cases that GEFT relies on did not involve severability provisions, but speech that was directly hindered by the challenged regulation. *See id.* at 54 ("Gilleo and other residents of Ladue are forbidden to display virtually any 'sign' on their property."); *Linmark Assoc., Inc. v. Willingboro Township*, 431 U.S. 85, 86–87 (1977); *Welsh v. United States*, 398 U.S. 333, 340 (1970). The general rule favoring more speech therefore does not show a manifest error of law in the denial of a preliminary injunction.

Nevertheless, GEFT argues that applying settled severance principles fails to "cure the condition that offends the Constitution." Dkt. 49 at 10–12;

---

[5] *Gilleo* ultimately held that regardless of content-neutrality, the City of Ladue's sign ordinance was unconstitutional because it "foreclose[d] an entire medium of expression." 512 U.S. 55. GEFT does not make a similar argument now, as it does not contend that the unchallenged UDO provisions would ban certain messages or classes of speech. *See* dkt. 49. Nor could it, since it did not make that argument in its motion for a preliminary injunction as required before raising it in a Rule 59(e) motion to amend. *A&C Construction*, 963 F.3d at 709. Instead, GEFT relies on the Eighth Circuit's reasoning about content-based regulations in *Gilleo*, even though the Supreme Court affirmed on other grounds. *See* dkt. 49 at 8.

*see Swann v. Charlotte–Mecklenburg Bd. of Ed.*, 502 U.S. 1, 16 (1971) ("The task is to correct . . . the condition that offends the Constitution.").  But applying severance principles is an established way of correcting First Amendment violations.  *See Barr v. Am. Assoc. of Political Consultants, Inc.*, 140 S. Ct. 2335, 2349 (2020) ("Congress may include a severability clause in [a] law, making clear that the unconstitutionality of one provision means the invalidity of some or all of the remainder of the law, to the extent specified in the text of the nonseverability clause."); *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1004–05 (7th Cir. 2002) ("In deference to the Ordinance's robust severability clause, we think that the unconstitutional provisions of the Ordinance may be severed workably from the rest of the provisions.").

Indeed, to give effect to "statutory text . . . courts hew closely to the text of severability and nonseverability clauses."  *Barr*, 140 S. Ct. at 2349.  So there is a "strong presumption" that unconstitutional provisions are severable and courts, "when confronting a constitutional flaw in a statute . . . try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact."  *Id.* at 2350.  GEFT instead would have "the tail (one unconstitutional provision) . . . wag the dog (the rest of the codified statute)," disregarding "the confined role of the Judiciary in our system of separation of powers."  *Id.* at 2351.  "Constitutional litigation is not a game of gotcha . . . where litigants can ride a discrete constitutional flaw in a statute to take down the whole."  *Id.*; *accord Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–31 (2006) (applying the same principles to a state statute).

8

There was therefore no manifest error of law in the Court's severability analysis. *See International Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690, 699 (6th Cir. 2020) (finding severability under a similar sign ordinance's severability clause); *accord GEFT Outdoor, L.L.C. v. Monroe County, Indiana*, No. 1:19-cv-1257-JRS-MPB, 2021 WL 5494483 at *13 (S.D. Ind. Nov. 23, 2021) (appeal pending) (holding that Monroe County's unconstitutional variance scheme for sign standards was severable).

GEFT makes a last argument on severability—that an Indiana statute requires Fishers's ordinance to include a variance scheme, so severing the current variance scheme would place the UDO in violation of state law.  Dkt. 61 at 6–8.  GEFT mentioned this argument in one sentence of its initial brief, dkt. 49 at 12[6], before expanding it in its reply brief, dkt. 61 at 6–8.  Perhaps for that reason, Fishers has not addressed this argument.  *See* dkt. 58.  What's more, GEFT has not directly cited or quoted the relevant statutes, instead relying on only a 1981 Indiana Court of Appeals case that considered a previous version of one of the statutes.  Dkt. 61 at 6–8 (citing *Strange v. Bd. of Zoning App. of Shelby Cnty.*, 428 N.E.2d 1328 (Ind. Ct. App. 1981)).

---

[6] GEFT argued that the "Court's Order invalidated [Fishers's] variance process as applied to Signs, meaning that the City is now in violation of Indiana law."  Dkt. 49 at 12.  That is inaccurate.  The Court found a likelihood of success on GEFT's challenge to Fishers's variance scheme but issued no injunction because GEFT sought only sweeping relief foreclosed by the severability finding.  Dkt. 43 at 11, 15–17.  The Court explained that the denial of GEFT's motion for preliminary injunction was "without prejudice to GEFT . . . seeking a narrower preliminary injunction," dkt. 43 at 17, but GEFT has not done so.

Notwithstanding potential waiver, the *Strange* case does not show a manifest error of law in the Court's severance analysis. Under Indiana Code § 36-7-4-901, if a legislative body enacts a zoning ordinance, it "shall establish a board of zoning appeals." GEFT does not dispute that Fishers has done so—indeed, the Board is a defendant here. *See* dkt. 1. Indiana Code § 36-7-4-918-4 then provides:

> A board of zoning appeals shall approve or deny variances of use from the terms of the zoning ordinance. The board may impose reasonable conditions as a part of its approval. A variance may be approved under this section only upon a determination in writing that:
> (1) The approval will not be injurious to the public health, safety, morals, and general welfare of the community;
> (2) The use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;
> (3) The need for the variance arises from some condition peculiar to the property involved;
> (4) The strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and
> (5) The approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.

That provision does not, however, require that ordinances include their own variance procedures—instead, it provides state standards for Boards of Zoning Appeals to consider. *See* Ind. Code § 36-7-4-918-4. GEFT cites no authority showing that Indiana state law requires the UDO to include its own variance procedures. *See* dkt. 61 at 6–8. And some Indiana cases indicate that the

10

state's procedures alone are sufficient.  *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1013 (Ind. Ct. App. 1996) (recognizing that under Indiana Code § 36-7-4-918-4, "a zoning board has the express power to both approve and deny a variance"); *see I-465, LLC v. Metro. Bd. of Zoning Appeals Div. II of Marion Cnty.*, 36 N.E.3d 1094, 1098 (Ind. Ct. App. 2015).  Indeed, an ordinance's silence or contrary provisions cannot "restrict the authority of a board of zoning appeals to grant a variance where the enabling statute endows such board with powers to authorize variances."  *Robert Lynn Co. v. Town of Clarksville Bd. of Zoning Appeals*, 867 N.E.2d 660, 670 n.9 (Ind. Ct. App. 2007) (quoting *Strange*, 428 N.E.2d at 1332).  GEFT therefore has not shown a manifest error of law with its argument that the UDO would violate state law if the challenged provisions were severed.

In short, once the UDO's challenged provisions are severed, GEFT's proposed billboards remain prohibited by unchallenged UDO provisions.  The "condition that offends the Constitution" has therefore been corrected and GEFT's complaints about UDO provisions that it did not challenge cannot support a preliminary injunction.  *See Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (Injunctive relief is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it.").[7]

---

[7] GEFT also argues that "[m]onetary damages will not make GEFT whole" in part because it "has a long history of displaying noncommercial messages, and it will never get those opportunities to place information in the marketplace of ideas back."  Dkt. 49 at 12–13.  GEFT cites no evidence in support, *id.*, but regardless, the Court did not deny the motion for preliminary injunction based on the availability of monetary damages.  *See* dkt. 43.

\*       \*       \*

GEFT's motion to amend invokes important and broad Constitutional principles that are essential to our liberty.  *See, e.g.*, dkt. 49 at 5 ("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth with ultimately prevail, rather than to countenance monopolization of that market . . . . Courts want citizens to have exposure to competing ideas in the faith that truth and humane values will have the best chance of prevailing under such a system."); dkt. 61 at 6 ("[T]he Court must not shrink from [its] obligation to enforce the constitutional rights of all persons."). True as those principles are, GEFT has not shown that they demand the relief it requests—an injunction requiring that Fishers allow GEFT to immediately erect its proposed digital billboards.  Dkt. 49 at 14.  Instead, GEFT relies on cases from other contexts that did not address severability.  *See* dkt. 49 at 6–10 (relying on *Brown v. Plata*, 563 U.S. 493 (2011); *Linmark Assoc. Inc. v. Willingboro Twp.*, 431 U.S. 85 (1977); *Gilleo*, 512 U.S. 43; *Welsh*, 398 U.S. 333). That falls well short of justifying Rule 59(e) relief—"an extraordinary remedy reserved for the exceptional case."  *Vesey*, 999 F.3d at 463.

## IV.
## Conclusion

GEFT's motion to amend is **DENIED**.  Dkt. [48].  GEFT **SHALL PROVIDE** notice of this order to the Court of Appeals.  *See Katerinos v. U.S. Dept. of Treasury*, 368 F.3d 733, 738 (7th Cir. 2004).

**SO ORDERED.**

12

Date: 10/27/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

William J. Barkimer
KRIEG DEVAULT LLP
wbarkimer@kdlegal.com

A. Richard M. Blaiklock
LEWIS WAGNER, LLP
rblaiklock@lewiswagner.com

Matthew C. Branic
KRIEG DEVAULT LLP (Carmel)
mbranic@kdlegal.com

Libby Yin Goodknight
KRIEG DEVAULT LLP (Indianapolis)
lgoodknight@kdlegal.com

Mark J. R. Merkle
KRIEG DEVAULT LLP (Indianapolis)
mmerkle@kdlegal.com

Charles R. Whybrew
LEWIS WAGNER, LLP
cwhybrew@lewiswagner.com