UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GEFT OUTDOOR LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-03058-JPH-CSW |
| | ) |
| CITY OF FISHERS, INDIANA, | ) |
| CITY OF FISHERS BOARD OF ZONING | ) |
| APPEALS, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

GEFT OUTDOOR is an advertising company that wants to construct two digital billboards on property that it has leased in Fishers, Indiana. But the billboards didn't meet the sign standards in Fishers's Unified Development Ordinance ("UDO"), and the Fishers Board of Zoning Appeals ("BZA") denied GEFT's requests for variances to allow digital signs that exceed "the sign area maximum and sign height maximum." Dkt. 1-3; dkt. 1-4. GEFT then filed this case, alleging that the UDO's sign standards and variance provisions are unconstitutional. Dkt. 1. Fishers has since amended the relevant parts of its UDO and moved to dismiss GEFT's complaint. Dkt. [63]. For the reasons below, the UDO amendments have mooted GEFT's federal claims, so the Court **GRANTS** the motion as to those claims and intends to relinquish jurisdiction over GEFT's state law claims.

1

# I.
# Facts and Background

Because Defendants have moved for dismissal under Rule 12(b)(1), the Court accepts the facts in the complaint as true. *Scott Air Force Base Props., LLC v. Cty. of St. Clair, Ill.*, 548 F.3d 516, 519 (7th Cir. 2008).

GEFT is an outdoor advertiser that buys or leases land to use for signs that convey "both commercial and noncommercial speech." Dkt. 1 at 3 (Verified Compl.). It has leased portions of two properties in Fishers and plans to place digital billboards on both. *Id.* at 3–4. The first billboard, on 131st Street, would be "a 70-foot, double-sided, back-to-back billboard with digital displays on both sides." *Id.* at 9. The second, on 106th Street, would be "a 70-foot, double-sided, back-to-back billboard with one side having a digital display and the other with a static display." *Id.*

Under the sign standards in Fishers's UDO, GEFT was required to apply for and obtain a permit before putting up a sign. UDO § 6.17.3.A ("It is unlawful for any person to place, alter, or to permit the placement or alteration of a sign . . . without first obtaining an approved sign permit application."); dkt. 32-4 at 4. At the time, the UDO defined a Sign as:

> Any name, identification, description, display, or illustration which is affixed to, painted on, or is represented directly or indirectly upon a building, structure, or piece of land, and which directs attention to an object, product, place, activity, person, institution, organization, or business. Religious symbols on places of worship or structures owned and operated by religious organizations are not considered a sign unless

2

> accompanied with text.  Address numbers are not considered a sign.

Dkt. 27 at 4 (quoting UDO art. 12.2).  The UDO also prohibits new pole signs and digital signs and imposes maximum area and height limitations on ground signs. UDO §§ 6.17.2.A, 6.17.5.I, 6.17.6.  GEFT sought variances from those provisions for its proposed billboards, but the BZA denied the requests.  Dkt. 1 at 10–11.

GEFT then brought this action, alleging that (1) Fishers's sign standards use content-based restrictions on speech in violation of the United States and Indiana Constitutions, (2) the permitting and variance schemes in Fishers's UDO are unconstitutional prior restraints on speech under the United States and Indiana Constitutions, and (3) the BZA's denials of GEFT's variance requests violate the United States Constitution and exceeded its statutory authority.  *Id.* at 12–20.  GEFT also sought a preliminary injunction preventing Fishers from enforcing its original UDO as to GEFT's proposed billboards.  Dkt. 10; dkt. 11 at 2.  The Court denied GEFT's motion for preliminary injunction.  Dkt. 43.  GEFT appealed, and the Seventh Circuit dismissed the appeal as moot because "Fishers has repealed or materially amended the challenged [UDO] provisions."  Dkt. 67.

In that UDO amendment, Fishers removed the religious-symbol exemption from the Sign definition.  *See* dkt. 64 at 9–10 (citing May 16, 2022 UDO amendment).  It also specified standards that must be considered in sign permit and variance decisions.  *Id.* at 12.

Fishers has filed a motion to dismiss GEFT's complaint for lack of jurisdiction and for failure to state a claim. Dkt. 63.

## II.
## Motion to Dismiss Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss claims for lack of subject-matter jurisdiction. The Court accepts as true the well-pleaded factual allegations, drawing all reasonable inferences in the plaintiff's favor. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

## III.
## Analysis

### A. Mootness

GEFT's first and second claims allege that the UDO's sign standards include unconstitutional content-based restrictions on speech and that its permitting and variance schemes are unconstitutional prior restraints on speech. Dkt. 1 at 12–20. Fishers argues that these claims are moot after its 2022 UDO amendments. Dkt. 64 at 16–21. GEFT responds that the claims aren't moot because the UDO continues to regulate speech and content "in the same fundamental way." Dkt. 65 at 12.

A federal court's jurisdiction "is limited by Article III to live cases and controversies . . . and an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017). "When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case

4

becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect." *Id.*; *Freedom from Religion Found., Inc. v. Concord Cmty. Schs.*, 885 F.3d 1038, 1051 (7th Cir. 2018) ("[I]f a government actor sincerely self-corrects the practice at issue, a court will give this effort weight in its mootness determination."). There is then "no longer an ongoing controversy" because "the injury has been removed, and there is no effectual relief" that the court can provide. *Ozinga*, 855 F.3d at 734.

Here, Fishers has amended the UDO provisions that are at the core of GEFT's federal constitutional claims. GEFT's first claim alleges that the UDO regulates speech based on content because it excluded religious symbols displayed by religious organizations from regulation and exempted residential post signs "relating to the sale or lease of property" from the permit requirement. Dkt. 1 at 5–7, 12–13; *see* dkt. 65 at 4. And GEFT's second claim alleges that the UDO's permitting and variance procedures regulated speech without "procedural safeguards or objective criteria," leading to arbitrary restrictions on speech. Dkt. 1 at 15–16.

Both UDO provisions that GEFT challenges in its first claim have been amended—Fishers removed the religious symbol exclusion in May 2022 and removed the "sale or lease" language from the residential post sign permit exemption in October 2022. *See* dkt. 64 at 9–11. Fishers has amended the permitting and variance provisions as well. The May 2022 UDO amendment added guidelines for the permit process and findings of fact that must be made to support variance decisions:

5

**Section 10.2.18. Sign Permit.** The following shall be added:

F. Application Decision

Upon receipt of a complete application and supportive documents, the Director shall approve, deny, or advise the petitioner of any changes that need to be made to the application within seven (7) business days. If required by certain Zoning Districts, a Sign Permit shall not be approved until the application has been reviewed and approved by the City's Board, Committees, and/or Commission. If additional documentation or changes are requested by staff, then the applicant has thirty (30) days to respond before the application is considered null and void. "In determining the need for additional documentation or changes, staff shall consider:

(1) The size (e.g. height, width, distance between grade and sign, copy size), composition (e.g. materials, posts, poles), lighting or location conditions imposed by the Unified Development Ordinance."

**Section 10.2.24. Variance.** The following shall be added:

"Sec. 10.2.24.E.6. Variances of Signage Standards

a. Approval: A Variance from CHAPTER 6.17. Signage Standards may be approved by the Board upon a determination that the Findings of Fact demonstrate:

(1) That the location and placement of the sign will not endanger or distract motorists or pedestrians; and,

(2) That the sign will not cover or blanket any prominent view of a structure or facade of historical or architectural significance; and,

(3) That the sign will not obstruct views of users of adjacent buildings; and,

(4) That the sign will not interfere with the visual quality of public open space ; and,

(5) That the sign is compatible with building heights of the existing skyline; and,

(6) That the sign does not impose a foreign element to an existing skyline; and,

(7) That the sign's illumination, lighting or digital character will not distract motorists or pedestrians nor contribute to hazardous or unsafe driving conditions for motorists; and,

(8) That the sign size (e.g. height, width, distance between grade and sign, copy size), composition (e.g. materials, posts, poles), lighting or location conditions are consistent with the time, place and manner conditions imposed by the Unified Development Ordinance.

b. Denial. The Board shall deny a variance from the CHAPTER 6.17. Signage Standards if, after a public hearing, the Board makes written Findings of Fact:

(1) That the location and placement of the sign will endanger or distract motorists or pedestrians; or,

(2) That the sign will cover or blanket a prominent view of a structure or facade of historical or architectural significance; or,

(3) That the sign will obstruct views of users of adjacent buildings; or,

(4) That the sign will interfere with the visual quality of public open space; or,

(5) That the sign is not compatible with building heights of the existing skyline; or,

(6) That the sign imposes a foreign element to an existing skyline; or,

(7) That the sign's illumination, lighting or digital character will distract motorists or pedestrians or contribute to hazardous or unsafe driving conditions for motorists; or,

(8) That the sign alters size (e.g. height, width, distance between grade and sign, copy size), composition (e.g. materials, posts, poles), lighting or location conditions so that it is not consistent with the time, place or manner conditions imposed by the Unified Development Ordinance."

GEFT argues that despite these amendments, the UDO still impermissibly regulates speech based on content "in the same fundamental way" because it requires permits for post signs on non-residential lots but not for post signs on all residential lots:



Dkt. 65 at 12.  But an amendment renders claims moot if the amended ordinance "is not substantially similar to the challenged provisions of the pre-amendment" ordinance, even if "the new provisions retain some of the previous infirmities."  *Zessar v. Keith*, 536 F.3d 788, 794–95 (7th Cir. 2008); *see Speech First, Inc. v. Killeen*, 968 F.3d 628, 646–47 (7th Cir. 2020).

The amendments here changed the core of the challenged provisions by removing the religious-symbol exemption, removing the "sale or lease" language from the residential post sign standard, and adding extensive and specific

7

criteria for permitting and variance decisions. *See* dkt. 1; dkt. 11; dkt. 64 at 9–12. The UDO's current distinction between residential and non-residential post signs is not substantially similar to the pre-amendment provisions. First, it's far less central to the UDO than the sign definition and the permitting and variance standards. Second, the current UDO's distinction between post signs is location-based and therefore raises a different legal question. *See City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 76 (2022) (reaching "the 'commonsense' result that a location-based and content-agnostic on-/off-premises distinction does not, on its face, single out specific subject matter for differential treatment"). Allowing this case to proceed based on only the allegations regarding the distinction between residential and non-residential post signs would therefore "create a substantially different controversy" about whether the UDO draws content-based distinctions under *City of Austin*. *Federation of Advert. Indus. Reps., Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) ("The proposed ordinance, a content-neutral prohibition, would create a substantially different controversy than the repealed ordinance, which was fundamentally a content-based prohibition.").

    In short, Fishers's amendments to its UDO fundamentally changed the challenged provisions that were at the core of GEFT's federal constitutional claims. *See Ozinga*, 855 F.3d at 734; *Freedom from Religion Found., Inc.*, 885 F.3d at 1051. Any challenge seeking prospective injunctive relief is therefore moot. *See Ozinga*, 855 F.3d at 734; *BBL, Inc. v. City of Angola*, 809 F.3d 317, 324 (7th Cir. 2015). Indeed, the Seventh Circuit reached that same conclusion

8

in dismissing as moot GEFT's appeal of the Court's denial of its motion for a preliminary injunction, dkt. 67, and in an appeal in a similar case, *GEFT Outdoor, LLC v. Monroe County, Indiana*, 62 F.4th 321, 325 (7th Cir. 2023) ("By repealing several content-based regulations . . . the County has mooted GEFT's request for an injunction against those provisions of the sign ordinance.").

GEFT also seeks monetary damages, however, and "a defendant's change in conduct cannot render a case moot so long as the plaintiff makes a claim for damages." *Federation of Advert. Indus. Reps.*, 326 F.3d at 929. Fishers argues that this does not overcome mootness because GEFT's proposed billboards were "independently prohibited . . . regardless of the outcome of its constitutional claims," leaving nothing to be remedied by monetary damages. Dkt. 64 at 20.[1] GEFT did not respond to this argument. *See* dkt. 65 at 11–21.

As the Court previously found, GEFT's proposed billboards violate the UDO's digital sign ban and do not comply with the UDO's area and height limitations—provisions of the UDO that GEFT does not challenge. Dkt. 43 at 15–16 (citing UDO §§ 6.17.2.A, 6.17.5.I, 6.17.6.E). And even if GEFT's challenges to other provisions succeed, under Indiana's severability doctrine a statute or ordinance with an unconstitutional provision "is not necessarily void in its entirety." *Id.* (quoting *Paul Steiler Enters., Inc. v. City of Evansville*, 2

---

[1] This is essentially a standing argument, but the Court addresses it within mootness—as both parties do—because "mootness doctrine requires re-evaluating the standing requirements throughout litigation." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 929 (7th Cir. 2013) ("[M]ootness is the doctrine of standing set in a time frame; that is, the requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).").

N.E.3d 1269, 1279 (Ind. 2014)). Instead, the "unobjectionable" portions can be severed and remain in effect if (1) they can be given legal effect and (2) "the legislature intended the provision[s] to stand" if others fall. *Id.*

Here, severing the content-based provisions from the pre-amendment UDO would leave "a workable legal standard" with sign standards that could be enforced against non-compliant signs even without a permitting scheme. *Id.* And Fishers stated its intent in the UDO's unambiguous severability provision: "If any provision or the application of any provision of the UDO is held unconstitutional or invalid by the courts, the remainder of the UDO or the application of such provision to other circumstances shall not be affected." *Id.* at 13–14 (quoting UDO § 1.2.4). Moreover, severing unconstitutional provisions is the presumptive remedy for First Amendment violations. *See* dkt. 62 at 6–9 (applying *Barr v. American Assoc. of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2349 (2020)); *GEFT Outdoor*, 62 F.4th at 330–32. So, since the UDO would prohibit GEFT's proposed billboards regardless of the challenged provisions, GEFT cannot recover damages for its federal claims related to its proposed billboards. *See Leibundguth Storage & Van Serv., Inc. v. Vill. of Downers Grove, Ill.*, 939 F.3d 859, 861–62 (7th Cir. 2019) ("The Village's ordinance contains content discrimination, but as we have explained that discrimination does not aggrieve" the plaintiff because the plaintiff's "problems come from the ordinance's size and surface limits, not from any content distinctions.").

Under the same severability principles, GEFT cannot recover damages on its claim related to the UDO's variance provisions. If the prior variance provisions were unconstitutional, they would be severed and "the only effect would be that no variances and no discretion would be permitted." Dkt. 43 at 13 (collecting cases). So GEFT could not have put up its proposed billboards—they were too big and had at least one digital surface. This is true regardless of whether the variance provisions were unconstitutional, and GEFT therefore cannot recover damages for the variance denials either. *See Leibundguth*, 939 F.3d at 861–62.

GEFT argues that *Leibundguth* doesn't apply here because it involved only commercial speech while GEFT intends to display both commercial and noncommercial speech on its proposed billboards. Dkt. 65 at 7–8. *Leibundguth*, however, drew no such distinction and instead straightforwardly held that the plaintiff lost because it was "not affected by the problematic exceptions." 939 F.3d at 860. And while overbreadth challenges involving non-commercial speech can expand standing to allow a statute to be challenged in its entirety, that does not allow a challenge from a party with no standing to challenge any provision. *See Board of Trs. of State Univ. of N.Y. v. Fox*, 492, U.S. 469, 484 (1989); *Harp Advert. Ill., Inc. v. Vill. of Chi. Ridge*, 9 F.3d 1290, 1291–92 (7th Cir. 1993).

Since GEFT cannot avoid this jurisdictional issue even under the prior UDO, the Court does not address in greater detail GEFT's argument that the UDO's variance-process amendment is void due to conflicts with Indiana

11

statutes, or its argument that its variance applications have "vested"[2] in the pre-amendment UDO.  *See* dkt. 65 at 17–21.  Since those provisions are severable—which would eliminate the variance procedure altogether—GEFT cannot obtain relief.

In short, monetary damages are "an impossibility" here because even if GEFT succeeded on its claims, it still could not erect its proposed billboards because they would still violate the UDO's digital sign ban and area and height limitations.  *Palmetto Props., Inc. v. County of DuPage*, 375 F.3d 542, 550 (7th Cir. 2004).[3]  So "no damage claim remains" and GEFT's first and second claims must be dismissed for lack of jurisdiction.  *See Fed. of Advertising Indus. Reps.*, 326 F.3d at 929, 933.

## B. State-law claims

GEFT's complaint includes claims under the Indiana Constitution and petitions for review of the Fishers Board of Zoning Appeals' denial of GEFT's variance requests.  Dkt. 1 at 12–19.  The petition for review arises under Indiana Code § 36-7-4-1607, *id.*, and the parties dispute whether federal court

---

[2] GEFT filed only variance applications, which were denied, *see* dkt. 1 at 10–11, so it has no other "complete application" that could have vested under Indiana Code § 36-7-4-1109(c).

[3] Fishers argues in a footnote that nominal damages similarly cannot save GEFT's first and second claims from mootness.  Dkt. 64 at 21 n.8.  GEFT did not respond.  *See* dkt. 65.  Nominal damages "satisf[y] the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right."  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).  But GEFT does not mention nominal damages in its complaint or brief, *see* dkt. 1; dkt. 65, so it has, at least to this point, waived such relief.  *See Richards v. N.L.R.B.*, 702 F.3d 1010, 1016 (7th Cir. 2012).  The Court therefore does not address whether GEFT may have suffered a "completed violation."  *See Brumit v. City of Granite City, Ill.*, 72 F.4th 735, 737 (7th Cir. 2023).

can be an appropriate venue for judicial review of a zoning decision. *See* dkt. 64 at 21–26; dkt. 65 at 14–28.

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479 (7th Cir. 2012); 28 U.S.C. § 1367(c). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt.*, 672 F.3d at 479. The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480.

Here, the factors weigh in favor of the Court's relinquishing jurisdiction over the remaining state-law claims. First, by bringing the state-law claims in federal court under 28 U.S.C. § 1367(a), GEFT tolled the statutes of limitations on the claims. *Artis v. District of Columbia*, 138 S.Ct. 594, 598 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock."). Second, substantial judicial resources have not been spent on these claims. *RWJ*, 672 F.3d at 481 ("[C]oncerns about judicial economy have their greatest force when significant

federal judicial resources have already been expended to decide the state claims.").  And most importantly, the meaning of the Indiana Constitution and the legality of zoning decisions are most appropriately adjudicated in state court especially when, as here, the outcome is not clear.  *See id.*; *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014) ("[F]ederal courts, as we have explained time and again, are not zoning boards of appeal.").

The Court therefore intends to relinquish jurisdiction over GEFT's remaining state-law claims.

## IV.
## Conclusion

Fishers's motion to dismiss is **GRANTED** to the extent that GEFT's federal claims are mooted by the UDO amendments.  Dkt. [63].  GEFT shall have **through February 23, 2024** to file a motion to amend their complaint, *see* dkt. 75, or show cause why judgment should not enter for the reasons in this order.  If GEFT does not seek leave to amend, the Court will dismiss GEFT's federal claims without prejudice, relinquish jurisdiction over its state-law claims, and enter final judgment.

**SO ORDERED.**

Date: 1/22/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel